CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 0 3 2012

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| AARON EUGENE WOODS, | ) | |
| | ) | Criminal Action Nos.   7:09CR00043 |
| Petitioner, | ) | 7:09CR00064 |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | **MEMORANDUM OPINION** |
| | ) | |
| Respondent. | ) | By: Hon. Glen E. Conrad |
| | ) | Chief United States District Judge |
| | ) | |

Before the court are two petitions filed pursuant to 28 U.S.C. § 2255 by Aaron Eugene

Woods ("Woods"), in connection with two separate federal criminal cases. Woods, who

proceeds pro se, challenges the validity of his confinement pursuant to the judgments of this

court convicting him, in one case, of knowingly making a false statement regarding his status as

a felon in the attempted purchase of a firearm and, in the other case, of using fire to commit mail

and wire fraud. After the government filed motions to dismiss each of the petitions, Woods

responded, making the matter ripe for disposition. For the reasons that follow, the court

concludes that the government's motions must be granted.

### FACTUAL AND PROCEDURAL BACKGROUND

As mentioned above, Woods' petitions arise from two separate criminal cases. In Case

Number 7:09-cr-00043 ("7:09-cr-00043"), a grand jury returned a four-count indictment on July

16, 2009, charging Woods with various firearm-related counts, including making a false

statement in connection with the attempted purchase of a firearm, in violation of 18 U.S.C. §

922(a)(6) (2006). In Case Number 7:09-cr-00064 ("7:09-cr-00064"), a grand jury returned a

twelve-count indictment on October 22, 2009, charging Woods, and two co-defendants, with

various felonies in connection with an arson, including using fire to commit a felony, in violation of 18 U.S.C. § 844(h).[1] The facts relevant to the instant petitions are set forth below.[2]

## I.      7:09-cr-00043

In a December 29, 2009 email transmitted by an Assistant United States Attorney ("AUSA") to Woods' attorney, Stephen Wills ("Wills"), the AUSA attached a copy of a proposed plea agreement in 7:09-cr-00064. (7:09-cr-00043 Docket No. 103-1 at 5.)  The plea agreement provided for a term of incarceration of 120 months, as an agreed and binding sentence under Federal Rule of Criminal Procedure 11(c)(1)(C). (Id. at 7.)  The email mandated that, for the attached proposed plea agreement to remain valid, Woods would have to sign it by 5:00 p.m. on January 4, 2010. (Id. at 5.)  The email also advised that, if Woods did not sign the plea agreement, the "next offer will not be that low," and furthermore, that the AUSA would consider adding another obstruction of justice charge through a second superseding indictment. (Id.) Pertinent to Woods' petitions is that the attached proposed plea agreement contemplated Woods pleading guilty to Count I of 7:09-cr-00064, using fire to commit a felony, in violation of 18 U.S.C. § 844(h). (Id. at 5, 7.)  Neither the email nor the attached proposed plea agreement contemplated Woods pleading guilty to any of the firearm-related charges in 7:09-cr-00043. (Id.)  According to Woods, this omission from the plea agreement of any charges in 7:09-cr-00043 did not seem suspicious to him because an ATF agent had previously informed him that the government did not intend to prosecute him on the firearm-related charges based on Woods' claim that, as explained below, he had attempted to purchase the firearm merely as a gift for his son. (Id. at 3.)

---

[1]      A grand jury returned a superseding indictment on December 10, 2009, adding three counts of obstruction of justice as to Woods only.

[2]      The facts are summarized based primarily on the text of Woods' motions to vacate and on the accompanying attachments.

After receiving a copy of the proposed plea agreement, Woods met with Wills on January 4, 2010 to discuss a potential guilty plea. (Id. at 1.) Based on Wills' advice, Woods signed the plea agreement that was attached to the December 29, 2009 email, pleading guilty to Count I of 7:09-cr-00064, using fire to commit a felony. (Id. at 1, 7.) However, to Woods' surprise, Wills visited Woods the next day, on January 5, at the Roanoke City Jail, where Woods was being detained prior to trial. (Id. at 2.) During this visit, Wills explained to Woods that the plea agreement that Woods had signed on the previous day had "mistakenly failed to include, or make mention of in any form, the gun charges related to the indictment in criminal case no. 7:09-cr-00043." (Id.) Wills related to Woods that the AUSA had "apologized for the oversight" and had asked Wills to tell Woods that "he had until 12 noon on January 7th to execute the newly revised plea agreement." (Id.) Wills also conveyed to Woods that the AUSA had agreed to let Woods choose to which firearm-related count of 7:09-cr-00043 he would plead guilty.[3] (Id.)

Confronted with this ultimatum, Woods questioned Wills on which of the four firearm-related charges was the "lesser charge and how [it] w[ould] affect [his] sentencing." (Id.) Woods asserts that Wills responded by informing Woods that he was not familiar enough with the gun statute to furnish Woods with a definite answer, but that he assumed that the charge embodied in 18 U.S.C. § 922(a)(6), making a false statement, constituted the lesser charge. (Id.) Woods then "reluctantly signed the revised plea agreement, but requested that Mr. Wills research the law and provide [him] with the information necessary to make an informed decision as to the

---

[3] The modified plea agreement still provided for an agreed sentence of 120 months under Rule 11(c)(1)(C): "In exchange for my guilty pleas to Count 1 of the Indictment 7:09CR00064 (the arson indictment) and to Count 2 of Indictment 7:09CR00043 (the firearms indictment), I understand that I will receive a fixed ten (10) year sentence of incarceration pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure." (7:09-cr-00043 Docket No. 83 at 3; 7:09-cr-00064 Docket No. 60 at 3.)

3

gun charge issue."[4] (Id. at 2–3.) Woods alleges that Wills never provided him with an answer to his question regarding the "lesser charge" contemplated by the four-count firearm indictment in 7:09-cr-00043. (Id. at 3.) Wills' failure to provide this information to Woods was evidenced at the change of plea hearing several days later, on January 8, 2010, when Woods halted the hearing to ask Wills "what the lessor [sic] charge was." (Id.)

Thereafter, on March 29, 2010, the court presided over the sentencing hearing in Woods' case. The presentence investigation report prepared in contemplation of the sentencing hearing reflected that Woods' base offense level under the United States Sentencing Guidelines for a conviction under 18 U.S.C. § 922(a)(6), making a false statement about his status as a felon in the attempted purchase of a firearm, was 14. See U.S.S.G. § 2K2.1(a)(6) (providing for a base offense level of 14 if the defendant "was a prohibited person at the time the defendant committed the instant offense"). However, Woods argues now that, because he attempted to purchase the firearm for his son as a gift, his attempted purchase was for "lawful sporting purposes" and, thus, his base offense level should have been reduced to 6, pursuant to U.S.S.G. § 2K2.1(b)(2). See id. § 2K2.1(b)(2) (providing for a decrease in the base offense level to 6 if the defendant "possessed all ammunition and firearms solely for lawful sporting purposes or collection"). According to Woods, he questioned Wills at the sentencing hearing about whether the issue surrounding the proper base offense level calculation would be resolved. (7:09-cr-00043 Docket No. 103-1 at 4.) Wills responded that the AUSA "would not agree." (Id.) At the conclusion of

---

[4]     The final revised plea agreement contained a paragraph in which Woods executed a blanket waiver of his right of collateral attack:

> I waive any right I may have to collaterally attack, in any future proceeding, any order issued in this matter and agree I will not file any document which seeks to disturb any such order. I agree and understand if I file any court document seeking to disturb, in any way, any order imposed in my case, such action shall constitute a failure to comply with a provision of this agreement.

(7:09-cr-00043 Docket No. 83 at 6; 7:09-cr-00064 Docket No. 60 at 6 (emphasis omitted).)

4

the hearing, the court sentenced Woods to 120 months on the arson conviction and 36 months on the firearm conviction, the two sentences to run concurrently, so as to achieve the 120-month sentence contemplated under the Rule 11(c)(1)(C) plea agreement.

Based on this series of events, Woods filed on April 5, 2011, a 28 U.S.C. § 2255 motion to vacate his conviction in 7:09-cr-00043, in which he advances two ineffective assistance of counsel arguments. First, Woods avers that Wills' performance was legally deficient based on Wills' alleged failure to respond to Woods' question regarding the "lesser charge" contemplated by the four-count indictment in 7:09-cr-00043. (Id. at 3.) Woods argues that Wills' failure to respond, coupled with the original revoked plea agreement and the associated time restraints imposed by the AUSA, "adversely affected [his] decision-making process and may have further proved detrimenta[l] to his best interest with regards to his acceptance of the final plea aggreement [sic]." (Id.) Second, Woods claims that Wills' performance was legally deficient for allegedly failing to dispute the assignment of a base offense level of 14 to his conviction for knowingly making a false statement about his status as a felon in the attempted purchase of a firearm. (Id. at 4.) According to Woods, Wills' alleged failure prejudiced him because the proper base offense level should have been 6, pursuant to the fact that Woods allegedly attempted to purchase the firearm as a gift for his son. (Id.)

## II.    7:09-cr-00064

As explained above, Woods pled guilty to Count I of 7:09-cr-00064, using fire to commit a felony. In an effort to have his conviction on this charge vacated, Woods filed on April 1, 2011, a § 2255 motion, in which he advances an ineffective assistance of counsel argument, claiming that Wills failed to conduct research that would have revealed that Woods' guilty plea was not supported by a proper factual basis. (7:09-cr-00064 Docket No. 102-1 at 1.) More

specifically, Woods argues that the building to which he set fire lacked the necessary connection to interstate commerce and, as such, that the arson could not have served as the basis for a conviction under 18 U.S.C. § 844(h)(1). (Id.)

## III.     Government's motions to dismiss

On June 16, 2011, the United States moved the court to dismiss each of Woods' petitions. (7:09-cr-00043/7:09-cr-00064 Docket No. 118.) In support of its motions, the government argues that Woods executed in his plea agreement a general waiver of his collateral-attack rights.[5] (Id. at 1.) Woods responded on October 3, 2011 to the government's motions to dismiss, addressing the issue of waiver, as well as the merits of his claims. (7:09-cr-00043/7:09-cr-00064 Docket No. 128.)

## DISCUSSION

## I.     Standard of review

To state a claim for relief under § 2255, a defendant must prove that one of the following occurred: (1) his sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). In a § 2255 motion, the defendant bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958) (per curiam). Furthermore, once a defendant has waived or exhausted his appeals, the court is "entitled to presume he stands fairly and finally convicted." United States v. Frady, 456 U.S. 152, 164 (1982). Thus, unless the petitioner alleges a jurisdictional or constitutional error, any asserted error—of fact or law—will not provide a basis

---

[5]      In the event that the court declines to dismiss Woods' § 2255 petitions on the basis of waiver, the government requests in its motions that the court grant it an opportunity to file a supplemental brief addressing the merits of Woods' claims. (7:09-cr-00043/7:09-cr-00064 Docket No. 118 at 1.)

6

for collateral attack unless it constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." United States v. Addonizio, 442 U.S. 178, 185 (1979) (internal quotation marks and citation omitted).

Where, as here, the petition is filed by a pro se litigant, the court must hold its pleadings "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). The requirement of liberal construction does not mean, however, that the court can ignore a clear failure in the pleading to "allege anything that remotely suggests a factual basis for the claim." Weller v. Dep't of Social Servs. for City of Balt., 901 F.2d 387, 391 (4th Cir. 1990). Similarly, "judges are not . . . required to construct a [pro se] party's legal arguments for him." Small v. Endicott, 998 F.2d 411, 417–18 (7th Cir. 1993). Likewise, the court is not required to "attempt[] to divine the point" the litigant seeks to make about the specific facet of the criminal proceedings that he challenges. Id. at 418. Where the petitioner's motion, when viewed against the record, does not state a claim for relief, the court should summarily dismiss the motion. Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## II. Analysis

### 1. Waiver of collateral-attack rights

As stated above, the government argues that the court should dismiss Woods' petitions based on the fact that he executed in his plea agreement a blanket waiver of his collateral-attack rights.[6] The United States Court of Appeals for the Fourth Circuit has recognized a narrow class of claims that fall outside of the scope of a general waiver of collateral-attack rights, namely

---

[6] To the extent that Woods' petitions can be construed as alleging that the waiver of his collateral-attack rights was not knowingly and voluntarily entered, this argument is squarely contradicted by his own sworn statements at his Rule 11 hearing. See Fields v. Atty. Gen. of Md., 956 F.2d 1290, 1299 (4th Cir. 1992) ("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy."). Because Woods advances no evidence to discredit these statements, any argument on this point must fail. Id.

7

claims regarding complete deprivation of counsel and the imposition of a sentence in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race. United States v. Lemaster, 403 F.3d 216, 220 n.2 (4th Cir. 2005); see also Waller v. United States, Civil Action No. 7:07CV00337, 2008 WL 190754, at *2 (W.D. Va. Jan. 18, 2008). In the instant cases, Woods raises ineffective assistance of counsel claims, but does not argue that he was "wholly deprived" of counsel. Lemaster, 403 F.3d at 220 n.2 (citing United States v. Attar, 38 F.3d 727, 732 (4th Cir. 1994)). "A claim that counsel was generally ineffective does not suggest that the defendant was wholly deprived of counsel and, thus, such claims do not fall outside the scope of the collateral attack waiver." Waller, 2008 WL 190754, at *3 (citing Lemaster, 403 F.3d at 219–20); cf. United States v. Embree, 169 F. App'x 761, 762 (4th Cir. 2006) (per curiam) (concluding that a waiver of collateral-attack rights did not encompass a defendant's claim that he was completely deprived of counsel with respect to appellate proceedings). Hence, because Woods does not profess that he was wholly deprived of counsel, his ineffective assistance of counsel claims likely fall within the scope of the general waiver of his collateral-attack rights. E.g., United States v. Rahman, No. 2:03CR10084-001, 2011 WL 6257306, at *4–5 (W.D. Va. Dec. 15, 2011); United States v. Johnston, Criminal Action No. 3:08-cr-00042-1, 2011 WL 2118838, at *4 (W.D. Va. May 25, 2011).

In any event, to the extent that Woods' ineffective assistance of counsel claims "bear on the validity of the plea or the waiver itself[,]" and thereby fall outside of the scope of the general

waiver of his collateral-attack rights,[7] Braxton v. United States, 358 F. Supp. 2d 497, 502 (W.D. Va. 2005), Woods' claims in his petitions, as explained below, fail on the merits.[8]

## 2.     7:09-cr-00043

To prove a claim of ineffective assistance of counsel, a defendant must show (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). With respect to the first prong, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[,]" meaning that counsel's performance "fell below an objective standard of reasonableness." Id. at 687–88. When analyzing this first prong, a court must lend great deference to counsel's representation. Id. at 689. With respect to the second prong, a defendant can show prejudice, when attacking a conviction following a guilty plea, only by demonstrating a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). If it becomes clear to the court that, while considering an ineffective assistance of counsel claim, the defendant cannot satisfy one prong of the Strickland standard, the court may terminate its analysis there without proceeding to consider the other prong. Strickland, 466 U.S. at 697.

As explained above, Woods' first argument with respect to 7:09-cr-00043 is that Wills' failure to furnish Woods with a response as to his question regarding the "lesser charge" contemplated by the indictment constituted legally deficient performance that "proved

---

[7]     After determining that the defendant had executed a valid guilty plea and waiver of his § 2255 rights, the Fourth Circuit in Lemaster addressed the defendant's ineffective assistance of counsel claims "only to the extent that they had some alleged bearing on the validity of the plea." United States v. Stevens, Case No. 1:08CR00015, 2011 WL 4477310, at *2 (W.D. Va. Sept. 28, 2011) (citing Lemaster, 403 F.3d at 222–23).
[8]     Although, as mentioned above, the government sought an opportunity to brief the merits of Woods' claims in the event that the court rejected the waiver argument, the court finds any additional briefing unnecessary for the resolution of these claims.

9

detrimenta[l] to his best interest with regards to his acceptance of the final plea aggreement [sic]." (7:09-cr-00043 Docket No. 103-1 at 3.) The court may summarily dispense with this argument based on Woods' failure to show prejudice as a result of Wills' allegedly deficient performance. Woods fails to demonstrate the existence of a reasonable probability that, but for Wills' alleged errors, he would have rejected the plea agreement as it related to 7:09-cr-00043 and, instead, would have insisted on going to trial. Hill, 474 U.S. at 59. Woods does not dispute the sufficiency of the government's proof regarding his conviction in 7:09-cr-00043. Neither does Woods claim that he would have persisted in pleas of not guilty to all of the charges in 7:09-cr-00043 and, instead, that he would have gone to trial, if Wills had reported back to him regarding his question on the "lesser charge."[9] In any event, Woods bargained for and received a 120-month sentence, without reference to the advisory guideline range assigned to the firearm charge. Woods' first argument is without merit.

As stated above, Woods also argues that Wills' representation fell below an objective standard of reasonableness when Wills allegedly failed to object to the assignment to Woods of a base offense level of 14 regarding the firearm conviction in 7:09-cr-00043. However, the record reflects that, after receiving Woods' presentence investigation report in preparation for the sentencing hearing, Wills did, in fact, raise written objections to the base offense level assigned to Woods regarding the firearm conviction. (7:09-cr-00043 Docket No. 91 at 28 (sealed).) In any event, Woods bears the burden of proving that he was entitled to the sentencing reduction contemplated by U.S.S.G. § 2K2.1(b)(2).[10] United States v. Solomon, 274 F.3d 825, 828 n.2

---

[9] The court also notes that all four of the firearm-related charges in the indictment—one count under 18 U.S.C. § 922(a)(6) and three counts under 18 U.S.C. § 922(g)(1)—carried maximum terms of incarceration of 10 years. 18 U.S.C. § 924(a)(2). Hence, it is unclear whether there truly was a "lesser charge."

[10] Woods articulates in passing another argument regarding U.S.S.G. § 2K2.1. Specifically, Woods appears to claim that Wills' representation was deficient in that Wills failed to object to the application of U.S.S.G. § 2K2.4 in calculating Woods' base offense level for his conviction under 18 U.S.C. § 922(a)(6). (7:09-cr-00043 Docket No. 128 at 24–25; 7:09-cr-00064 Docket No. 127 at 24–25.) Instead, Woods argues, U.S.S.G. § 2K2.1 should have been

(4th Cir. 2001). Woods fails to carry his burden on this point. The fact that someone allegedly purchased a firearm for his son as a gift does not necessarily denote that the firearm was possessed "'solely for sporting purposes . . .'—and no other purpose."[11] Id. at 828 (quoting U.S.S.G. § 2K2.1(b)(2)) (emphasis in original); see also, e.g., United States v. Riley, 376 F.3d 1160, 1171 (D.C. Cir. 2004) (stating that the defendant must prove that the firearm was possessed solely for lawful sporting purposes); United States v. Miller, 224 F.3d 247, 253 (3d Cir. 2000) (same); United States v. Mazzie, 64 F.3d 664, 1995 WL 478590, at *2 (6th Cir. 1995) (per curiam) (unpublished table decision) (same); United States v. Gresso, 24 F.3d 879, 881 (7th Cir. 1994) (same). Moreover, Woods' argument fails for an even more fundamental reason which Woods himself establishes indirectly in his pleadings. The "lawful sporting purposes" reduction is available only to a defendant who actually "possessed" the ammunition or firearms. U.S.S.G. § 2K2.1(b)(2) (emphasis added). Woods goes to great lengths in his briefs, infra note 12, to maintain that he never possessed the firearm: "Mr. Woods did not, at any time control the firearm, nor did he load the firearm, or take ownership of the firearm." (7:09-cr-00043 Docket No. 103 at 5.) Elsewhere, Woods strenuously maintains that he "did not admit to possession of a firearm" and that "there was no evidence that he had ever constructively possessed it." (7:09-cr-00043 Docket No. 128 at 21–23; 7:09-cr-00064 Docket No. 127 at 21–23.) Hence, by Woods' own implicit admission, he does not qualify for the reduction offered by U.S.S.G. § 2K2.1(b)(2).

---

applied in calculating his base offense level for that conviction. (Id.) However, Woods' argument is unfounded. As the record reflects, U.S.S.G. § 2K2.4 was applied to Woods only as to his conviction under 18 U.S.C. § 844(h) in the other case, 7:09-cr-00064. (7:09-cr-00043 Docket No. 91 at 6, 7, 25, 26 (sealed).) Section 2K2.4 was not applied to Woods in calculating his base offense level for his conviction in 7:09-cr-00043 under 18 U.S.C. § 922(a)(6). Instead, U.S.S.G. § 2K2.1, the very guideline section that Woods claims should have been applied to him, was, in fact, applied to him in calculating his base offense level in 7:09-cr-00043. (Id. at 7.)

[11] The court notes that Woods' pleadings could be construed liberally to advance the argument that, had he pled guilty to 18 U.S.C. § 922(g)(1) (knowing possession of a firearm or ammunition by one previously convicted of a crime punishable by one year of imprisonment), instead of to § 922(a)(6), he could have received the benefit of "lawful sporting purposes" sentencing reduction. Insofar as Woods articulates this argument in his pleadings, this contention likewise fails. The specific statutory provision to which Woods pled guilty is immaterial. Instead, it is the nature of the alleged purpose for which Woods attempted to possess the firearm (i.e., giving the firearm to his son as a gift) that fails to substantiate that the firearm was possessed solely for lawful sporting purposes.

11

Finally, the court notes that, even if Woods' argument regarding the "lawful sporting purposes" reduction carried weight, Woods has failed to demonstrate that he suffered any resulting prejudice—he has not argued that, assuming the reduction applied to him, there would have been a reasonable probability that he would have altogether rejected the plea agreement as to 7:09-cr-00043 and, instead, gone to trial. Hill, 474 U.S. at 59. For these reasons, Woods' second argument concerning 7:09-cr-00043 is likewise without merit.[12]

---

[12]    At various stages in his briefs, Woods articulates in passing a number of other arguments, addressed below, as to why the court should vacate his conviction in 7:09-cr-00043. Woods argues in passing that his conviction under 18 U.S.C. § 922(a)(6) should be vacated because he never "possess[ed]" the firearm. (7:09-cr-00043 Docket No. 103 at 5; 7:09-cr-00043 Docket No. 128 at 21–23; 7:09-cr-00064 Docket No. 127 at 21–23.) However, this argument is misplaced as the offense to which he pled guilty, 18 U.S.C. § 922(a)(6), does not require possession as one of its elements, but instead, requires as an element the "acquisition or attempted acquisition" of a firearm or ammunition. 18 U.S.C. § 922(a)(6). In a similar vein, Woods argues that the sentence of incarceration imposed upon him pursuant to 18 U.S.C. § 924(a)(2), which lays out the punishment associated with violating certain sections of 18 U.S.C. § 922, is "completely improper" because, according to Woods, § 924(a)(2) authorizes a court to punish only a defendant who violates § 922(g)(1) through knowing possession of a firearm. (7:09-cr-00043 Docket No. 128 at 21; 7:09-cr-00064 Docket No. 127 at 21.) However, Woods himself exposes the flaw in this argument. As Woods acknowledges in his filings (id.), and as the court has noted above, the knowing possession requirement to which Woods refers relates to a conviction under § 922(g)(1), a statutory provision under which Woods was not convicted. Instead, Woods was convicted under § 922(a)(6), which, as stated above, does not require any form of possession as a prerequisite for conviction.

Woods also argues in passing that he did not realize that his previous underlying conviction "had been listed as a felony." (7:09-cr-00043 Docket No. 103 at 5.) However, Woods' own sworn statements at his Rule 11 hearing contradict the argument he now raises in his petition. Woods admitted at his Rule 11 hearing that "I filled out the report and falsely signed a document that said I had not been convicted of a felony." (7:09-cr-00043/7:09-cr-00064 Docket No. 118-2 at 37.) After being asked by the court later in the hearing whether he contested that he had been convicted of a felony at an earlier time, Woods responded, "No." (Id. at 55.) To the extent that Woods argues that he "did not believe that his prior Florida conviction made him unable to purchase a firearm," this contention is irrelevant. (7:09-cr-00043 Docket No. 128 at 22; 7:09-cr-00064 Docket No. 127 at 22.) The crime to which he pled guilty required that he knowingly make a false statement in connection with the acquisition or attempted acquisition of a firearm. 18 U.S.C. § 922(a)(6). As just explained, Woods admitted during his change of plea hearing that he falsely represented that he had not been convicted of a felony during the attempted purchase of a firearm. Even if Woods believed that this prior felony conviction did not render him unable to purchase a firearm, he nonetheless still admittedly made a false statement concerning his status as a felon and, by so doing, violated the statute.

In yet another attempt to overturn his conviction in 7:09-cr-00043, Woods mentions in passing a search warrant that was executed at his home on January 22, 2009. (7:09-cr-00043 Docket No. 128 at 9–10; 7:09-cr-00064 Docket No. 127 at 9–10.) Woods argues that neither the search warrant nor the supporting affidavit "describe[d] any firearms to support a filing in connection with case number 7:09CR00043." (Id. at 10.) Woods seemingly argues that, because neither the search warrant nor the supporting affidavit described any firearms, any weapons discovered during the execution of the search warrant could not properly serve as the basis for his prosecution in 7:09-cr-00043 under either 18 U.S.C. § 922(a)(6) or (g)(1). Woods also ostensibly faults Wills and his previous attorney for failing to file, or to advise Woods to file, a motion to suppress any firearms confiscated during the execution of the search warrant. (Id.) However, Woods' argument on this point demonstrates his confusion as to the factual basis for his prosecution in 7:09-cr-00043. The firearm at issue in 7:09-cr-00043 was not recovered during the execution of a search warrant at his home; rather, the firearm at issue in the case, as stated in the indictment, was the "22 caliber Glenfield semi-automatic rifle, Model 60, serial number 20420436" that Woods

12

### 3. 7:09-cr-00064

As explained above, Woods also seeks to overturn his conviction in 7:09-cr-00064,

claiming that Wills failed to conduct research that would have revealed that the building to

which he set fire lacked the necessary connection to interstate commerce. Thus, Woods

contends, his conviction under 18 U.S.C. § 844(h)(1) offends the Constitution.

Section 844(h)(1) of Title 18, the statutory provision to which Woods pled guilty,

criminalizes the act of "us[ing] fire or an explosive to commit any felony which may be

prosecuted in a court of the United States." 18 U.S.C. § 844(h)(1). Thus, based on the express

language of the statute, "§ 844(h)'s jurisdictional nexus is derived from the underlying felony,

which must be one that 'may be prosecuted in a court of the United States.'" United States v.

McAuliffe, 490 F.3d 526, 536 (6th Cir. 2007) (quoting United States v. Creech, 408 F.3d 264,

267 (5th Cir. 2005)). The underlying felonies at issue here were mail and wire fraud. Woods

does not contend that the federal statutes criminalizing mail and wire fraud were enacted in

violation of Congress' Commerce Clause power. Hence, because both of the underlying felonies

---

handled and attempted to purchase from Vinton Pawn Shop on December 23 and 29, 2008. (7:09-cr-00043 Docket No. 9 at 1–3.) Furthermore, to the extent that Woods refers to the ammunition that was recovered from his home during the execution of the search warrant, and which formed the basis for Count IV of the indictment, the record reflects, and Woods does not dispute, that the officers obtained a separate search warrant to seize the ammunition. (7:09-cr-00043/7:09-cr-00064 Docket No. 118-2 at 40.)

Finally, Woods also seeks vacation of his conviction under 18 U.S.C. § 922(a)(6) based on the circumstances, recounted above, surrounding the initial revoked plea agreement and the time restraints imposed by the AUSA. (7:09-cr-00043 Docket No. 103-1 at 3.) Woods argues in passing that these circumstances, coupled with Wills' allegedly deficient performance, adversely affected his decision to accept the final plea agreement. (Id.) Any attempt by Woods to claim that his guilty pleas were not entered voluntarily is flatly beaten by his own sworn statements at the Rule 11 hearing, in which he stated that he was pleading guilty because he in fact was guilty, "that he had not been coerced, that he was pleading guilty voluntarily, that he was aware of all of the consequences of his guilty plea, and that he was entirely satisfied with the services provided by his attorney." United States v. Mixson, Criminal Action No. 7:08CR00043, Civil Action No. 7:10CV80222, 2010 WL 2520995, at *7 (W.D. Va. June 21, 2010); see United States v. Ubakanma, 215 F.3d 421, 425 (4th Cir. 2000) (determining that the defendant's conclusory claims that he was misinformed or pressured into pleading guilty contradicted his sworn statements at the Rule 11 hearing); see also Lemaster, 403 F.3d at 221–22 ("[I]n the absence of extraordinary circumstances, . . . . the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." (internal citations omitted)); Fields, 956 F.2d at 1299 ("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy.").

are felonies that "may be prosecuted in a court of the United States," 18 U.S.C. § 844(h)(1),

thereby satisfying the necessary jurisdictional nexus, Woods' conviction under the statute was

not unconstitutional.[13]  See McAuliffe, 490 F.3d at 536 (concluding that a conviction under 18

U.S.C. § 844(h)(1) did not offend the Constitution because the underlying felony, mail fraud,

supplied the requisite connection to interstate commerce); Creech, 408 F.3d at 267 (same).

Therefore, because no amount of research would have altered the fact that Woods' conviction

under 18 U.S.C. § 844(h)(1) did not violate the Constitution, Woods fails to prove either

constitutionally deficient performance by Wills or prejudice in his ineffective assistance of

counsel claim regarding 7:09-cr-00064.[14]

---

[13]      Woods' reliance on Jones v. United States, 529 U.S. 848 (2000), United States v. Carr, 271 F.3d 172 (4th
Cir. 2001), United States v. Ramey, 24 F.3d 602 (4th Cir. 1994), and similar cases, is misplaced.  These cases stand
for the proposition that arson of an owner-occupied private residence cannot provide the basis for a conviction under
18 U.S.C. § 844(i), because the residence fails to supply the required connection to interstate commerce.  However,
these cases lend no support to Woods' argument regarding his conviction under 18 U.S.C. § 844(h), a completely
different provision in the statute that, as discussed above, derives its jurisdictional nexus through the underlying
felony, which must be one that "may be prosecuted in a court of the United States." 18 U.S.C. § 844(h)(1).

[14]      Woods challenges his conviction under 18 U.S.C. § 844(h) from another angle by articulating two related
arguments.  First, Woods claims that he was not named as a defendant in the counts in the 7:09-cr-00064 indictment
related to the mail and wire fraud crimes, which represented the underlying felonies that were effectuated through
the arson.  (7:09-cr-00043 Docket No. 128 at 16; 7:09-cr-00064 Docket No. 127 at 16.)  However, the very
indictment to which Woods refers undercuts this argument—Counts V–IX of the indictment represent the mail and
wire fraud charges and Woods is named as a defendant in each of the counts.  (7:09-cr-00064 Docket No. 5 at 8–14;
Docket No. 42 at 8–14.)

Second, Woods contends that he was not a party to the conversations between his co-defendants concerning
the fraudulent scheme that was the object of the arson, and that he did not accept any insurance proceeds gained as a
result of the arson.  (7:09-cr-00064 Docket No. 102-1 at 2–3; 7:09-cr-00043 Docket No. 128 at 16–17; 7:09-cr-
00064 Docket No. 127 at 16–17.)  Although Woods' claims on these two points might technically be true, his own
statements at the Rule 11 hearing manifest that he understood that his co-defendants' purpose in setting fire to their
home was to obtain insurance proceeds.  (7:09-cr-00043/7:09-cr-00064 Docket No. 118-2 at 54–55.)  The transcript
of the hearing reflects:

> Mr. Wills:  I think, my understanding is you understood they were burning the house
down for monetary gain, to get the insurance funds somewhere down the line.
> The Defendant:  I think I understood, yes, that that was their end result, yes.
> The Court:  They weren't just—
> The Defendant:  For their gain, yes, absolutely.
> The Court:   —burning it down to have an exciting evening; they expected to get
something out of it?
> The Defendant:  Yes.
> The Court:  And you understood that?
> The Defendant:  Yes, Your Honor.
> The Court:  And you participated with that understanding?

14

## 4. Challenge to handling of two separate cases in consolidated fashion

In his response to the government's motions to dismiss, Woods also claims that Wills' performance was legally deficient because Wills failed to "ask for separate trials" in the two criminal cases. (7:09-cr-00043 Docket No. 128 at 12; 7:09-cr-00064 Docket No. 127 at 12.) Woods further claims that his constitutional rights were violated by having a single attorney represent him in two separate criminal cases and by resolving both cases through a single plea agreement. (Id.) Initially, the record undercuts Woods' argument about Wills' alleged failure to request separate trials in the two cases. The record reflects that both cases originally were scheduled for separate jury trials. (7:09-cr-00043 Docket Nos. 36, 41, 54, 78, 80; 7:09-cr-00064 Docket Nos. 30, 31.) In fact, it was Woods, through counsel, who moved the court to consolidate the two cases for purposes of trial, citing as reasons judicial economy, the existence of common witnesses between both cases, possible benefits at sentencing, and the provision to counsel of additional preparation time. (7:09-cr-00064 Docket No. 49.)

Furthermore, there is nothing per se unconstitutional or, for that matter, improper, about a single attorney representing a criminal defendant in two separate cases, as long as no conflict of interest exists and as long as the applicable ethics rules are otherwise satisfied. Finally, Woods' contention concerning the single plea agreement utilized in the resolution of both cases is likewise meritless—the case law illustrates that courts deal with such plea agreements without disapproval. E.g., United States v. Carson, 469 F.3d 528, 532 (6th Cir. 2006); United States v. Johnson, 183 F.3d 1175, 1177 (10th Cir. 1999); United States v. Allen, 153 F.3d 1037, 1046 (9th Cir. 1998); United States v. Russell, 2 F.3d 200, 202 (7th Cir. 1993); United States v. Jordan,

---

The Defendant: Yes.
The Court: And you expected to benefit financially yourself?
The Defendant: Yes.

(Id.) Hence, as the record reflects, Woods' contentions are without merit.

15

Criminal Nos. 1:06CR1 LG-RHW, 1:06CR2 LG-RHW, 1:06CR3 LG-RHW, Civil Nos. 1:08CV148 LG, 1:08CV149 LG, 1:08CV150 LG, 2009 WL 3488686, at *1 (S.D. Miss. Oct. 22, 2009).

### 5.     Challenge to guilty pleas

Finally, Woods' § 2255 motions, construed liberally, also allege that his pleas of guilty were not knowingly and voluntarily made.  However, as mentioned above, <u>supra</u> note 12, "this claim directly contradicts the sworn statements [Woods] made during his Rule 11 hearing." <u>United States v. Hylton</u>, Criminal Action No. 7:08CR00050, Civil Action No. 7:11CV80347, 2011 WL 5592847, at *7 (W.D. Va. Nov. 16, 2011).  As summarized earlier, Woods affirmed during his Rule 11 hearing that he was pleading guilty because he in fact was guilty, that he had not been coerced, that he was pleading guilty voluntarily, that he was aware of all of the consequences of his guilty plea, that he understood the constitutional rights that he would waive by pleading guilty, and that he understood that he had bargained for a fixed 10-year period of incarceration.  (7:09-cr-00043/7:09-cr-00064 Docket No. 118-2.)  Furthermore, when asked during the hearing whether he was satisfied with Wills' services in his case, Woods responded, "Absolutely.  If I wasn't going to prison, I would recommend his services." (<u>Id.</u> at 56–57.)

Woods has failed to identify any evidence that would "undermine his prior statements regarding the voluntariness of his guilty plea." <u>Hylton</u>, 2011 WL 5592847, at *7.  Consequently, Woods is bound by the statements made at his Rule 11 hearing.  For this reason, the court is constrained to reject his claims contradicting those statements.  See <u>Lemaster</u>, 403 F.3d at 221–22 ("[I]n the absence of extraordinary circumstances, . . . . the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations

16

that contradict the sworn statements." (internal citations omitted)); <u>Fields v. Atty. Gen. of Md.,</u> 956 F.2d 1290, 1299 (4th Cir. 1992) ("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy.").

## CONCLUSION

For the reasons stated, Woods' arguments fail to demonstrate any constitutional error. Accordingly, the court will grant the government's motions to dismiss and will deny Woods' motions to vacate. Additionally, because Woods has failed to demonstrate "a substantial showing of the denial of a constitutional right," the court will deny a certificate of appealability. 28 U.S.C. § 2253(c).

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to Woods and to all counsel of record.

ENTER:      This _3rd_ day of February, 2012.

_____
Chief United States District Judge

17